**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00510-RSE**

**JERMON R.**                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                                 **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

The Commissioner of Social Security denied Claimant Jermon R.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 15; DN 16). The Commissioner filed a responsive Fact and Law Summary. (DN 17). The time for Claimant to file a reply has expired. The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

I.      Background

Jermon R. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on March 4, 2023, alleging disability beginning January 1, 2016. (Transcript, hereinafter, "Tr." 171-72). He alleged disability based on the following impairments: PTSD, chronic migraines, degenerative disc disease of the spine, bilateral hip impairments, and pulmonary impairments. (Tr. 196). Claimant's application was denied at the initial review level on

April 14, 2023 (Tr. 106-07) and again at the reconsideration review level on April 28, 2023. (Tr. 113-14).

At Claimant's request (Tr. 116), Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a remote administrative hearing on August 17, 2023 (Tr. 43-86). Claimant appeared by phone with his attorney. (*Id.*). An impartial vocational expert also participated. (*Id.*). Claimant provided the following relevant testimony during his hearing.

The age range for Claimant's period of disability was 42 to 47 years old. (Tr. 49). Claimant has a degree in criminal justice and lives in a house with his wife and their sixteen-year-old son. (Tr. 48-49). From 2011 to 2015, Claimant was in Afghanistan working as a civilian contractor for the military. (Tr. 50-51). He performed mechanical work on heavy military trucks, sometimes in a supervisory capacity. (Tr. 51-52). After returning from Afghanistan, he worked for a company named Chemours as a plant mechanic. (Tr. 52). He ended up going back overseas for a few months in 2015-2016 with ManTech, which is where he fell and hurt his hip, head, neck, and back. (*Id.*). Claimant has not been able to work since that accident. (Tr. 54).

After the accident, Claimant started physical therapy and eventually had a labral repair surgery in 2017. (Tr. 56). He was given a cane in 2019, but felt the cane was impeding more than helping. (Tr. 57). He learned to limp without it. (*Id.*). Because of a herniated disc in his back and neck, doctors recommended surgery, but he chose to have the hip surgery first since the pain was worse. (Tr. 59). Claimant never had any surgery relating to the herniated disc. (*Id.*). For the pain, he takes gabapentin and muscle relaxers that help some but make him foggy. (Tr. 60). Additionally, Claimant has a history of asthma, COPD, and emphysema, and takes albuterol, as well as allergy medication. (Tr. 60).

In 2006, he was in an explosion in Iraq and started having migraines after. (Tr. 61). The migraines became worse in 2016 after his fall. (*Id.*). He has taken many different medications trying to find the best combination. (*Id.*). Prior to 2021, he had migraines three to four times a week. About a year after the fall, the migraines became prolonged, requiring him to lay in bed for two to six hours depending on the day. (Tr. 65-66).

Claimant believes his conditions have worsened since 2016/2017. (Tr. 63). He says he would have gone back to work if he was able. (*Id.*). But he estimates he can only walk 20 feet without resting and only stand 5-10 minutes before needing to sit. (Tr. 64). He can use the microwave and, on a good day, can run into a store to get a few items. (Tr. 68). Claimant also deals with nightmares and overall difficulty sleeping. (Tr. 73-74).

On October 25, 2023, ALJ McDaniel issued an unfavorable decision. (Tr. 20-32). Claimant appealed ALJ McDaniel's decision to this Court in March 2024. (Tr. 1968-70). Five months later, the Court remanded Claimant's case to the Administration, pursuant to a joint remand. (Tr. 1972-74). The Appeals Council issued an Order, indicating that ALJ McDaniel's decision inadequately evaluated two medical opinions from Claimant's records – those of Dr. Price and Dr. Chao. (Tr. 1977-78).

At the direction of the Appeals Council, ALJ McDaniel held another administrative hearing in April 2025 (Tr. 1908-39). During the second hearing, Claimant provided largely the same testimony as during his first hearing but clarified several points. He suffers from bilateral hip pain. (Tr. 1919-1920). He originally injured his right hip when he fell on the military base, but a few years later fell in his backyard and injured his left hip as well. (*Id.*). Claimant has been on medication for his PTSD since 2008. (Tr. 1922-23). The only "social thing" he participates in are

3

holidays with his family. (Tr. 1927). Claimant does not handle crowds well and only shops at a store during non-busy times or in an emergency. (*Id.*).

ALJ McDaniel issued a new decision in May 2025, once again finding Claimant was not disabled. (Tr. 1877-1907). Applying the five-step sequential analysis for adult disability claims from 20 C.F.R. § 404.1520(a), ALJ McDaniel made the following findings. First, Claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2016, through his date last inured of December 31, 2021. (Tr. 1883). Second, through the date last insured, Claimant had the severe impairments of degenerative disc disease, degenerative joint disease, asthma, posttraumatic stress disorder (PTSD), mild neurocognitive disorder from traumatic brain injury (TBI). (*Id.*). Third, through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 1884-85). Fourth, through the date last insured, Claimant had the residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [T]he claimant could not perform any lifting over 25 pounds; would need to alternate sitting and standing at a 30 minute interval; could not climb ladders, ropes, or scaffolds; could not climb stairs; could occasionally climb a ramp; and could occasionally stoop, kneel, crouch, and crawl. The claimant could tolerate occasional exposure to atmospheric conditions such as fumes, odors, dusts, and pulmonary irritants, and could tolerate occasional exposure to temperature extremes involving cold, heat, humidity, and wetness. The claimant could tolerate noise levels 1 (very quiet), 2 (quiet), and 3 (moderate) but not levels 4 (loud) or 5 (very loud) per the SCO. The claimant could have no jobs in direct sunlight, could not tolerate excessive exposure to vibration. There would be no work in high, exposed places and no operation of machinery with moving mechanical parts. The claimant could understand, remember, and carry out simple instructions; interact occasionally with supervisors; and interact occasionally with coworkers, but could have no interaction with the public for task completion. The claimant could perform tasks without a specific production rate pace, such as an assembly line or hourly production quotas.

4

(Tr. 1885-98). Additionally, at Step Four, ALJ McDaniel found that through the date last insured, Claimant could not perform any of his past relevant work. (Tr. 1898-99). Fifth and finally, considering the Claimant's age, education, work experience, and RFC through the date last insured, ALJ McDaniel determined there were jobs that existed in the national economy that Claimant could have performed. (Tr. 1899-901).

The Appeals Council did not exercise its right to assume jurisdiction over the case. Claimant, accordingly, appealed ALJ McDaniel's May 15, 2025 decision directly to this Court. (DN 1).

II.     Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations

omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III.    Analysis

Claimant alleges two claims of error from ALJ McDaniel's decision, both relating to the Step Four residual functional capacity (RFC) assessment. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

A.  ALJ McDaniel's Evaluation of Dr. Price's Statement

On November 14, 2017, Tracy Price, M.D., wrote a letter on behalf of Claimant that concluded "it is my medical opinion that [Claimant's] symptoms would significantly interfere with his ability to adequately fulfill the requirements of jury duty." (Tr. 246). Dr. Price described how Claimant had been under her care for four years and that Claimant has post traumatic stress disorder (PTSD) and traumatic brain injury (TBI) stemming from events occurring during combat

6

while deployed with the US Army. (*Id.*). She noted Claimant's PTSD symptoms include anxiety, panic attacks, insomnia, recurrent nightmares, hypervigilance, and irritability, which made it very difficult for him to be in confined spaces or crowded areas. (*Id.*). His TBI symptoms, Dr. Price elaborated, include frequent headaches and difficulty concentrating. (*Id.*). Dr. Price lastly noted that Claimant underwent hip surgery earlier in the year and that his chronic hip pain makes it difficult for him to sit for long periods. (*Id.*).

In her first decision denying benefits, ALJ McDaniel considered the 2017 statement of Dr. Price and indicated her statements "are not an opinion as they do not offer a function-by-function analysis of the claimant's ability to perform basic work-related activities." (Tr. 20). ALJ McDaniel, accordingly, did not evaluate Dr. Price's statement for persuasiveness. (*Id.*). When the case was remanded, the Appeals Council determined that Dr. Price's statements regarding Claimant's mental and physical limitations constitute an opinion under 20 CFR 404.1513(a)(2) and ALJ McDaniel was required to evaluate the opinion's persuasiveness, using the supportability and consistency factors from 20 CFR 404.1520(c). (Tr. 1977).

On reevaluation in the May 15, 2025 decision, ALJ McDaniel again discussed Dr. Price's statements, finding they were "not related to the claimant's ability to work" and were "not vocationally relevant." (Tr. 1897). ALJ McDaniel then determined the statements were "neither inherently valuable nor persuasive." (*Id.*). But ALJ McDaniel noted that to the extent an analysis is warranted or necessary, the statements were unpersuasive as they are "not supported by any objective evidence" and appear "to be based instead upon the claimant's reporting." (*Id.*).

Now, Claimant takes issue with ALJ McDaniel's finding that Dr. Price's opinion was not related to his ability to work or vocationally relevant. Claimant reiterates that Dr. Price's statement constituted a medical opinion within the meaning of the regulations because Dr. Price commented

on his ability to perform the mental demands of work activities. (DN 16, at PageID # 2380-81). Claimant believes ALJ McDaniel directly defied the Appeals Council's Remand Order by once again not recognizing Dr. Price's statements as a medical opinion. (*Id.*). To Claimant, this harmful error deprived him of adequate consideration of an opinion going "to the heart" of his ability to work. Claimant notes that Dr. Price's opinion suggests he had substantial limitations in understanding, carrying out, and remembering instructions, responding appropriately to supervision, coworkers, and usual work limitations, and dealing with changes in a routine work setting. (*Id.* at PageID # 2382-83). Confusingly, however, Claimant only cites ALJ McDaniel's original October 30, 2023 decision when alleging error. (*Id.* at PageID # 2380-81 (citing Tr. 1953)).

The Commissioner responds that ALJ McDaniel properly considered Dr. Price's statements under the regulations by evaluating the supportability and consistency factors as directed by the Appeals Council's Remand Order. (DN 17, at PageID # 2392). And because Claimant's argument relies on language from the ALJ's flawed analysis in the original decision, the Commissioner asserts his criticisms are misguided and unpersuasive. (*Id.*).

The regulations require an ALJ to evaluate each medical source opinion's persuasiveness based on: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) specialization of the source; and (5) other factors that tend to support or contradict the medical source opinion. 20 C.F.R. § 404.1520c(c). Of these factors, supportability and consistency are the most important. *Id.* at (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* at (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The Sixth Circuit has not defined a specific standard to determine whether an ALJ sufficiently complied with the "articulation requirement." However, courts in this Circuit have applied the requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do

require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Judges in this District have determined that an ALJ's reasons for rejecting or adopting a medical opinion "may be gleaned from elsewhere in the written decision." *Victor H. v. O'Malley*, No. 3:22-CV-563-CRS, 2024 WL 1008580, at *5 (W.D. Ky. Mar. 8, 2024) (citing *Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) ("meaningful judicial review exists – even if the ALJ provided only a cursory or sparse analysis – if the ALJ made sufficient factual findings elsewhere in the decision that supports her conclusion."); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (it is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision)).

Although ALJ McDaniel expressed her continued view that Dr. Price's statements were "not related to the claimant's ability to work" and "not vocationally relevant," she briefly analyzed the persuasiveness of the opinion as required by the regulations. Regarding consistency, ALJ McDaniel noted that Dr. Price's statements were "not supported by any objective evidence." (Tr. 1897). Regarding supportability, ALJ McDaniel noted that Dr. Price's statements "appear[] to be based . . . upon the claimant's reporting." (*Id.*). Though this analysis is cursory, elsewhere in the RFC, ALJ McDaniel thoroughly evaluated Dr. Price's records and other medical evidence of record.

ALJ McDaniel recounted objective and subjective evidence from Dr. Price's medical records earlier in the RFC analysis. For instance, ALJ McDaniel noted Claimant's reports of nightmares, isolation, hypervigilance, and avoidance of crowds, but also Dr. Price's objective

mental status exam findings being "generally unremarkable[,]" with continued use of medication.[1] (Tr. 1892). These observations constitute additional support for ALJ McDaniel's conclusion that Dr. Price's medical opinion was based primarily on Claimant's subjective reporting.

Likewise, elsewhere in the RFC analysis, ALJ McDaniel provided extensive summaries of the objective medical evidence of record beyond Dr. Price's statements and records. Notably, ALJ McDaniel discussed how Claimant began treating with a new mental health provider around June 2018 and though he reported anxious mood, his mental status examinations continued to be unremarkable. (Tr. 1893). Claimant continued to report nightmares and newly reported impaired concentration and attention in the fall of 2018, but ALJ McDaniel noted "otherwise unremarkable mental status examination findings." (*Id.*).

Not every piece of objective evidence discussed by ALJ McDaniel is inconsistent with Dr. Price's statements. For example, ALJ McDaniel discussed Claimant's increasing symptoms in 2019, and records indicating Claimant had abnormal mood and affect, as well as impaired memory and concentration. (Tr. 1893-94). But the inquiry is whether ALJ McDaniel's conclusion is supported by substantial evidence in the record, not *every piece* of evidence in the record. Again, most of the evidence demonstrating abnormalities in mental health are subjective reports from the Claimant. The objective evidence of record largely demonstrated unremarkable mental status examinations by providers during the alleged period of disability. (Tr. 1891-94). ALJ McDaniel's thorough discussion of the mental health evidence, therefore, adds support to his determination

---

[1] ALJ McDaniel did not mention Dr. Price by name in reviewing her medical records. However, the ALJ provided citations to her medical records from visits with the Claimant from January 2017 to March 2018. At each of these visits, Dr. Price observed Claimant on mental status examination to be "alert, oriented to place, person, and time," adequately or well groomed, having good eye contact, as well as normal rate, tone, and volume of speech. (Tr. 270-272, 277-280, 305-06, 308-10, 325-27, 351-53, 395-97). Dr. Price also consistently noted Claimant's affect was "normal range, appropriate," that he exhibits good impulse control and judgment, and has insight. (*Id.*).

that Dr. Price's statements in the jury-duty excuse were inconsistent with the body of objective medical evidence of record.

Review of ALJ McDaniel's entire RFC shows that she found there was not enough objective support and too much reliance on subjective support to deem Dr. Price's statements persuasive. This analysis aligns with the regulations and permits the Claimant to understand why Dr. Price's statements were rejected. For these reasons, no error results.

B. ALJ McDaniel's Evaluation of Claimant's Subjective Symptoms and Pain

As part of the RFC assessment at Step Four, an ALJ must evaluate a claimant's subjective allegations of pain. 20 C.F.R. §§ 404.1520c, 404.1529(a). An ALJ must consider all "symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

Claimant argues that after summarizing the evidence pertaining to Claimant's mental impairments in the RFC, ALJ McDaniel mischaracterized his testimony concerning his limitations. (DN 16, at PageID # 2386). Claimant takes specific issue with ALJ McDaniel's determination that:

> The claimant does not report any significant limitations in memory, concentration, understanding, interacting with others, or handling stress or changes in routine, and did not indicate any specific mental limitations in activities of daily living related to the relevant period.

(*Id.* (citing Tr. 1895)). To disprove the ALJ's determination, Claimant cites to his testimony describing his inability to function for several hours when he has migraines; his inability to prepare meals due to lack of concentration and memory issues, which have resulted in multiple fires; and that his medication causes side effects including memory fog, tiredness, and drowsiness, which interfere with his ability to focus. (*Id.*). Moreover, Claimant asserts that ALJ McDaniel "invented testimony" that Claimant never made, including his having no difficulty interacting with others or

12

handling stress. (*Id.* at PageID # 2386-87). Claimant also emphasizes that he reported significant limitations in activities of daily living and interacting with people, specifically that his only social activities are spending time with family on holidays, that he is unable to function in crowds, that he only shops at stores when they are not busy, and his mental health issues stemming from his PTSD and TBI. (*Id.*). These false statements and mischaracterizations, Claimant alleges, tainted ALJ McDaniel's evaluation of his subjective complaints under SSR 16-3p and require remand. (*Id.* at PageID # 2387).

In response, the Commissioner argues ALJ McDaniel properly considered the Claimant's hearing testimony in evaluating his subjective complaints and forming the RFC. (DN 17, at PageID # 2393). The Commissioner concedes that ALJ McDaniel's statement that Claimant "does not report any significant limitations" was "perhaps [an] inexact use of the phrase." (*Id.*). But the Commissioner maintains that ALJ McDaniel did not mean that Claimant did not have any measurable or consequential mental limitations because she found Claimant had moderate mental limitations in broad areas of functioning and included appropriate mental restrictions in the RFC. (*Id.* at PageID # 2396-97). Regarding Claimant's daily activities, the Commissioner points out that ALJ McDaniel never suggested that he was without limitations but instead relied in part on Claimant's testimony to find restrictions for his limitations, including simple instructions and no production rate pace work. (*Id.*).

In evaluating a claimant's subjective allegations of pain, the ALJ first must determine whether there are medically determinable impairments that could reasonably be expected to produce the alleged symptoms. Next, if such impairments exist, the ALJ "will consider [the claimant's] statements about the intensity, persistence, and limiting effects of [the] symptoms" and "evaluate [the claimant's] statements in relation to the objective medical evidence and other

evidence" in determining whether a claimant is disabled. *Id.* § 416.929(4). In doing so, the ALJ

evaluates the claimant's statements against factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and

416.929(c)(3), including:

> (1) A claimant's daily activities;
>
> (2) The location, duration, frequency, and intensity of pain and other symptoms;
>
> (3) Factors that precipitate and aggravate the symptoms;
>
> (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> (5) Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;
>
> (6) Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and
>
> (7) Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors and may discuss only those relevant to the

alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ's decision must include "specific reasons for the weight given to the individual's

symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess

how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 510304, at *10.

But the ALJ need not use "magic words" so long as it is clear from the decision as a whole why

the ALJ reached a specific conclusion. *Lloyd v. Comm'r of Soc. Sec.*, No. 5:23-CV-01166-SL,

2024 WL 2278251, at *14 (N.D. Ohio Apr. 30, 2024). An ALJ's conclusions regarding subjective

symptom evidence receive great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d

709, 714 (6th Cir. 2012).

14

At the outset of the RFC, ALJ McDaniel discussed Claimant's hearing testimony that he has a history of PTSD, that he treats with medication, that he experiences difficulty being in crowds, that he has limited social interaction, and that he can only shop in stores at times when they are not crowded. (Tr. 1886-87). ALJ McDaniel then found that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1887). ALJ McDaniel went on to exhaustively summarize Claimant's medical records relating to his mental impairments. (Tr. 1891-95). This analysis included discussion of Claimant's treatment (therapy), ongoing use of medication, and changes to medication. Elsewhere in the RFC, ALJ McDaniel discussed Claimant's activities of daily living, including his ability to drive, and his reports that he has no difficulties maintaining personal care. (Tr. 1891). Moreover, ALJ McDaniel recognized factors that precipitate his mental symptoms, such as nightmares, avoidance of crowds, and hypervigilance. (Tr. 1893).

Then came the statement from ALJ McDaniel that Claimant alleges is a mischaracterization: "claimant does not report any significant limitations in memory, concentration, understanding, interacting with others, or handling stress or changes in routine, and did not indicate any specific mental limitations in activities of daily living related to the relevant period." (Tr. 1895). While this broad statement appears to disregard some of Claimant's testimony, it should not be reviewed in a vacuum, as Claimant wishes. By isolating the statement, Claimant fails to consider the statement's full context within the RFC. Of note, immediately following the inartful statement, ALJ McDaniel assessed mental limitations for Claimant, including "simple

instructions, occasional interaction with supervisors and coworkers, no interaction with the public, and no production rate pace work." (Tr. 1895).

The limitation to "simple instruction" and to "no production rate work pace" accommodate Claimant's supported complaints regarding concentration and memory. Whereas the limitation to occasional interaction with supervisors and coworkers and no interaction with the public accounts for Claimant's supported complaints regarding crowds and social interaction. In other words, ALJ McDaniel concluded that Claimant had some mental limitations, but not significant, work-preclusive limitations.

The Court, accordingly, does not find that ALJ McDaniel harmfully mischaracterized Claimant's testimony. Nor did ALJ McDaniel "invent" Claimant's testimony. In making the statement regarding Claimant not reporting significant limitations or specific mental limitations, ALJ McDaniel summarized the evidence of record. The Court does not read ALJ McDaniel's statement to mean that Claimant testified at the hearing that he had no mental limitations. Once more, right after ALJ McDaniel's statement, she added limitations to Claimant's RFC to accommodate his credible subjective symptoms.

In conclusion, ALJ McDaniel's analysis of Claimant's subjective symptoms covered at least five of the § 404.1529(c)(3) factors. She provided adequate rationale for crediting some of Claimant's subjective complaints, while not finding Claimant to be as limited as he alleged. For these reasons, the Court finds ALJ McDaniel's analysis of Claimant's subjective complaints to be without error and to be supported by substantial evidence.

IV.    Order

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:      Counsel of Record